Sanita Faith Anthony v. Andrew Saul Alan Bushlow, Law Firm of Abbott Bushlow & Schechner in 2016 alone. She was psychiatrically admitted as an inpatient on three separate occasions. The last time after attempting a suicide. The only mental RFC, residual functional capacity evaluation in the record, was performed by her own treating physician, both her treating nurse practitioner and her own physician. Her treating psychiatrist at Catholic Charities, and that evaluation is consistent with her meeting two listings, 12.04 and 12.06, and also corroborates several work-related impairments that the vocational expert who testified indicated would preclude all employment. And those are with respect to her inability to maintain consistent pace, to attend regularly. This case is from before 2017. The treating physician rule applies. So even if there were conflicting medical evidence in the record, the opinions of her treating physicians would be entitled to substantial deference. But frankly, there's no conflicting evidence in this file. Our jurisprudence from that time period from the case law that applied then indicates that a non-examining agency reviewer is never substantial evidence to overcome the opinions of a treating physician. And then that ignores also a whole second malady. She has substantial and severe weight loss. Between May of 2016 and December of 2017, her body mass index was below 17.5, which is really, truly emaciated. So where is the disagreement? The issue here, I suppose, why we're at this, the Second Circuit on this case, is when did her disability begin? Because if she applied for Title II benefits under the disability insurance program, she needed to establish that her disability began prior to December 31st of 2015 based on her earnings record. Well, I would submit that the psychiatric evidence of record indicates that she was suffering from these conditions even before December 31st, 2015. But there's a second related issue here. The second program is the SSI program. And that program doesn't hinge on whether there's a date last insured, because it's not based on what you paid into the system. It's based on financial need and establishing indices. When the claimant presented at the Social Security office and they took her application in December of 2016, she was not represented by counsel. You're talking about a young woman who is unquestionable. She has a fourth grade education and she's illiterate. So she was completely dependent upon the agency representative who greeted her at that time to take her application. Now, mind you, in December of 2016, that was already after her date last insured under the disability insurance program. One would think that the Social Security representative would have taken both an application for Title II benefits and for Title XVI benefits. And in fact, there is some reason to think that that happened. If you look at the index that was utilized for the record at the hearing, it suggests that there was a Title II benefit application taken. And in fact, I was the attorney who represented her at the hearing. I thought it was a Title XVI application until I actually got the hearing record just prior to the hearing. And the judge also thought it was a Title XVI application. And when we looked at the record and we saw that there was no evidence of a Title XVI application having been taken, I made an application at the hearing. I requested that the judge consider the Title XVI application as having been taken, since it looked like that was the case. And common sense would suggest that it should have been taken since this entire application postdated the date last insured. But if the judge felt that he couldn't do that, the alternate relief was let's have a brief adjournment. We'll go back to the local office. We'll file a concurrent Title XVI application. And then it will be escalated back up to the hearing stage. And if there was an application at the adjourned date, the judge could adjudicate both claims. But what was the impediment to, at that time, filing an application? We didn't know it was necessary. I mean, once you got to the hearing and you became aware, oh, actually, there hasn't been one filed, and you made your oral application, there was no attempt to subsequently, what was the thing that barred you from subsequent to that doing an adjournment proceeding, wouldn't allow an adjournment in order to allow the Title XVI application to be How are you prejudiced about it? Because it was the procedure followed by the agency that when there's a higher level application pending, they take the later filed application and they hold it in abeyance. So unless there was a direction from the judge that after we filed the second application, that he then wanted it escalated and it would be adjudicated at the second hearing date, that application would have sat there until the first application was resolved anyway. And, you know, justice delayed can sometimes be justice denied. Why would it be escalated anyway, is my understanding, and I'm ignorant of these procedures, so I may be totally wrong. But what happens when any application is filed is first it's adjudicated administratively and you get a yes or a no. And if you get a no, then you can ask for a hearing before the ALJ. Why would there be any expectation that if the SSDI application was adjourned, that the SSI application would immediately be denied and re-adjourned? And immediately be teed up for an ALJ hearing, coincident with the one that was now scheduled on the SSDI? The judge has the authority to exercise his discretion to ask at the administrative level that it immediately be expedited and adjudicated concurrently with the claim that he already has. And the reason why he would do that is because it's overlapping, period. So you wouldn't want to have a situation where the judge is waiting to decide, you know, whether the claimant is disabled during a certain time period, and then on a related time period, things are happening at the adjudicative level when he's already there, ready to give the claimant their fair hearing. And that is something that can be done. And frankly, in this case, it was an abuse of discretion. And the reason for that is because what essentially happened was the claimant's claim was sliced up in a way where looking at the record, I think any reasonable fact finder is going to agree that this woman is severely psychiatrically disabled, and after her date last insured, is also disabled because of her body mass index. And yet, if we take the position that we don't have to look at any of the evidence after her date last insured, I'm just going to ignore it, and if we don't allow her to subsequently bring the claim that should have been taken when she went to the office, right, when she applies in December of 2016, that's already after her date last insured. If they take a second disability application, she had had an earlier one that was denied, and don't take an SSI application, and if you even look at her DIB application, it says on it, I intend to apply for SSI. The agency is supposed to follow up with that. So even if for some reason at the local office they didn't take both applications and put them both through, and again, it's ambiguous as to whether that happened or not, but let's assume that it didn't, they're supposed to follow up and say, hey, you said you wanted to apply for SSI, where's your application? And they're supposed to do it by phone when you have somebody who's illiterate also. Suppose she applied today for SSI, would there be any retroactive benefit possibility there, or would the case be adjudicated simply as of the date that she filed the application? Well, SSI applications do not have any retroactive effect. That's one of the other differences of the program. When you apply for disability under Title II, you can get up to one year's retroactive benefits, and you can establish disability for up to 17 months prior. But SSI is only prospective. Now, the interesting question, and I don't know the answer to this, is because of the fact that the as her indication in her DIB application that she wanted to file for SSI is considered an oral application, I suppose if there's a clear direction from this Court that no SSI application was ever taken, and it should have been, then perhaps she's protected the right to file now retroactive to when they took her oral inquiry about whether she wanted to file for SSI. I've never seen that adjudicated, so I don't know. But, frankly, if we don't win on that's what the next step is going to be if we don't win today. But it seems like just in the interest of I'm just wondering why it wasn't done immediately. In other words, granted you had a position that the judge should have adjourned, and then you could apply for SSI. And then everything could be consolidated, and that would be a nice neat bundle. But why wouldn't it have been better as soon as that hearing ended to go and apply? Because two reasons. One, we do believe that she's entitled to DIB also. We believe the record substantiates that the disability began before her date last insured. And so we were going to continue with that appeal anyway. And when there's a claim pending at a higher level, they won't process a new application at the lower level. They will hold it in abeyance. But if there's no retroactive application for SSI, suppose you lose on the SSDI application. It's not a very favorable standard of review after all. And she sort of lost all that intervening from what would have clearly been the case that the application had been filed the next day. You see what I'm saying? I mean, the SSI application is filed after you lose this case, as opposed to after you lost for the ALJ. Or even, I assume the ALJ didn't rule at the conclusion of that hearing, right? Or do they do that? No, the ALJ in this case found that she was not disabled. Yeah, but did he or she do that right on the spot, or did you get a ruling later? A few months later there was a written decision. Yeah, so you could have gone, just as you would have gone right back if you got the adjournment, you could have gone and filed the SSI right then while the ALJ case was still pending. Except that we've continued with our appeal of the DIB denial, so that SSI application would be sitting there, and I don't know that it adds that much anyway, because if the SSI application was never taken initially, and again, I think the record is ambiguous, because there's some indication in the file, and both the judge and I thought that it was a concurrent claim initially, but if it wasn't, the fact that her DIB application said she intended to file for SSI, our next step is we'll go back and argue that it should be considered now as fulfilling her statement there. But, I mean, taking a step back and looking at this claimant, you're talking about someone who it was clearly legal error to find her not disabled in the first place. And there's really no reasonable view of these facts that would suggest that she was other than severely, psychiatrically disabled. All right, Mr. Bishop, I think we have your argument. You've got some rebuttal. Good afternoon, Your Honors. May it please the Court, my name is Jeffrey Peters, and I represent the Defendant Applee, Commissioner of Social Security in this matter. There is one final agency decision before this Court, and it is the Commissioner's November 2018 decision that Appellant Sunita Anthony was not entitled to Title II disability insurance benefits from September through December 2015, which is the three-month relevant period in this case. As the District Court found below, the Commissioner's decision is supported by substantial evidence, including Ms. Anthony's mental health records from 2012 to 2018, which showed her symptoms were largely under control with medication and therapy. Other substantial evidence includes several benign mental status examinations, and the October 2018 opinion from Ms. Anthony's nurse, John Lonzon, outlining no or moderate mental limitations in multiple areas of functioning. Based on this substantial evidence, the presiding administrative law judge supportably concluded that Ms. Anthony had only moderate mental limitations, and she could perform a range of unskilled work in the national economy. While Ms. Anthony disagrees with the ALJ's decision in this case and argues that the evidence could be read in a different way, that is not the standard to overturn the ALJ's decision. That is not a proper substantial evidence objection. The proper course of review is whether or not no reasonable fact finder could agree with the ALJ's decision. To be clear, there was no final agency decision before this Court about Ms. Anthony's eligibility for Supplemental Security Income, or SSI. And that is because Ms. Anthony never filed for SSI, despite having numerous opportunities to do so. As the Supreme Court explained in Matthews v. Eldridge in 1976, it is a, quote, non-waivable element, end quote, that a claimant applied for benefits. Here, the record showed that Ms. Anthony did not apply for SSI. And this fact is fatal to her claim that if she had applied for SSI, then she might have been found disabled. Let me, and I hear that argument, but let me just ask, in terms of the denial of a continuance, I suppose one thing you might say is, well, that ruling merges into the final decision on the application that was before the ALJ. So the only question is, did the denial of a continuance somehow prejudice that application? But I think what we're hearing is an argument that had that adjournment been granted, the processing of an SSI application would have been expedited in a favorable way. And I guess I have two questions about that. One, is there any reason that one could give for why it was not an abuse of discretion to grant that? And number two, even if there was none, is the argument that there is just no way to reach that, whatever prejudice might have occurred to her SSI possibilities in this proceeding? So, Your Honor, I'll start with the first question that you had there about whether or not there's any reason to assume that this was not abuse of discretion. Your Honor, this was not an abuse of discretion because, as you can see, at the record, page 10 of the ALJ's decision discussing the procedural history and also this request for an oral application for SSI to be considered, the ALJ pointed out that two regulations were not satisfied, and those regulations are 20 CFR 416, 345, and 416, 350. And those regulations explain that a proper application for SSI must be filed in a prescribed written form. In other words, it can't be an oral application for benefits. But that's still, I think, what Mr. Buschlo is suggesting is what he was asking for was an adjournment that would enable him to go back and file a proper written form on his client's behalf at a time when it would still have been possible to consolidate the two proceedings. I understand your question. And what would be wrong with that? I understand the point that the ALJ couldn't just treat it as if there were a written form, but why not give him the chance to file the written form? Because as the ALJ explained during the hearing, Your Honor, Ms. Anthony had numerous opportunities. She had a long period of time to apply for SSI. Council joined the case in June of 2017, reviewed the record, and saw that there was no SSI application. But no SSI application was filed afterwards. And ultimately, the ALJ determined that because there had been no SSI application filed to date as of the November 2018 hearing, there was no reason to adjourn the hearing and instead told Ms. Anthony to go and file for SSI after the hearing. And I just want to bring up a point that my friend across the aisle mentioned earlier. There was actually nothing stopping her from applying for SSI at that time because the only thing that was stopping her would be to stop her from applying for Title II benefits again while she was waiting for an ALJ decision. But because she had never applied for SSI, she didn't have to wait until this case got to the Appeals Council or to the Federal District Court or to here. She could have filed for SSI at any point in time. But as noted, she did not do so. Can she now? Can she file for SSI now? Yes, she can file for SSI now. But I do want to add a caveat to that, Your Honor, which is that it's not entirely clear if she will be eligible for SSI benefits, either from a resource standpoint or a medical standpoint. By resource standpoint, I mean in order to be eligible for SSI, it's a means-based program. And that means that you have to have, as an individual like Ms. Anthony, who is unmarried, you have to have $2,000 or less in resources. So to answer your question, yes, she can apply for SSI. But that doesn't necessarily mean that she would be eligible. I don't know whether she would be eligible until she applies and it's processed. Exactly, Your Honor. And because she has not applied for SSI as of this time, simply this issue is not ripe for review. The only decision before this Court is the ALJ's November 2018 Title II decision. And as 42 U.S.C. 405G explains, judicial review is limited to final decisions of the agency. Now, despite never applying for SSI, Ms. Anthony has offered three reasons why the agency should have considered her eligibility anyway. First, Ms. Anthony points out that in her Title II application, she expressed an intent to apply for SSI. But that statement of intent does not constitute a proper SSI application. That's an oral inquiry into SSI benefits. And an oral inquiry into SSI benefits is not an application for those benefits. The Ninth Circuit tackled this issue in Crane v. Shalala, and they came to the same conclusion, which is that an oral inquiry is not the same as an SSI application. The second reason Ms. Anthony claims that she's exempt from applying for SSI is allegedly the agency never sent her a notice telling her to do so, even assuming that this was true. The regulations don't recognize this as an exemption for not applying for SSI in the fact that Ms. Anthony had every opportunity to file for SSI and chose not to do so. Third, Ms. Anthony notes that she asked the ALJ to accept an oral application for SSI benefits or any alternatives to spend the hearing. However, as we've discussed, an oral application is not a proper SSI application. There's really nothing the ALJ can do in order to essentially conjure an SSI application out of thin air. The last issue raised is whether the ALJ had a duty to grant Ms. Anthony's request to amend her alleged onset date to February 22, 2014, but the ALJ had no duty to do so. The only relevant agency policy did not require the ALJ to accept this request, and nothing in Social Security Ruling 18-1P does either. Ultimately, the ALJ had discretion to decline Ms. Anthony's request to amend her onset date, and here he appropriately did so. In sum, the Commissioner's Final Title II decision in this case should be affirmed for the reasons outlined by the district court below and those cited in my brief to this Court. If Your Honors have no questions at this time, I will rest on my brief and ask the Court to affirm. Thank you. Thank you, Mr. Chief. Thank you. Does anyone have a rebuttal? Yes. Very good. The fact that there was the agency keeps referring to this three-month period between the time that she applied and the time that her date last insured expired and acts as if that doesn't mean we can't look at any medical evidence after that time period. We cited in our reply brief the case law. The medical evidence after the date last insured is still relevant in order to determine whether a claimant is disabled before the date last insured. For example, if you had a doctor who examines a claimant after their date last insured and substantiates that they're an amputee and the claimant comes to the hearing with records that shows that that injury occurred in a car accident 20 years prior, the fact that there's no medical records which show treatment for the amputation presented at the hearing doesn't mean we can't accept that the person's an amputee by looking at medical records afterwards. That's an extreme case. But the fact that you know in 2016 after four years of steady psychiatric treatment under the care of a psychiatrist, a therapist, and a nurse practitioner at two different institutions that she winds up in the hospital three times in one year and that the doctors who are treating her both before and after that document severe psychiatric symptoms, we're allowed to infer that that disability had been going on even before the date last insured. We're not limited to just looking at medical records for the two or three months that predate the date last insured and follow the application date. That's the little clarification I'd like to make. Thank you. All right. Thank you both. We'll take this case under advisement as well.